ARTHUR V. McDERMOTT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18443.   Promulgated September 30, 1949.

*Arthur V. McDermott, pro se.*
*Stephen P. Cadden, Esq.,* for the respondent.

470

OPINION.

LEECH, *Judge*: The sole question on which the issue here must be decided is whether, when petitioner conveyed his one-eighth undivided interest in certain real property to Emerson in consideration of its promissory note, the transaction resulted in the creation of a debt from Emerson to petitioner in the amount of the note, or an investment in Emerson of the same amount. This issue presents a question of fact. *Cohen* v. *Commissioner*, 148 Fed. (2d) 336; *Janeway* v. *Commissioner*, 147 Fed. (2d) 602. The intent of the parties as to the nature of the transaction controls. *Wilshire & Western Sandwiches, Inc.* v. *Commissioner*, 175 Fed. (2d) 718.

Emerson was formed in 1936 to hold and operate a business property then owned by eight heirs of the estate of Mary E. McDermott. This corporation was organized and operated for a legitimate business purpose from the time of its incorporation until its principal asset was taken over by condemnation for public purposes. It earned considerable operating income, paid its obligations, except those here involved, made capital repairs, kept complete books of account, and maintained its own bank account. Although the noteholders and the stockholders were the same individuals, Emerson was a distinct and separate taxable entity. See *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436. The respondent has so treated it and does not here argue otherwise. The relationship of petitioner to Emerson might have been established as that of a stockholder, a creditor, or both. What do the facts and the proper inferences to be drawn therefrom establish as bear-

ing on the intention to create a debt of that $12,500 rather than make an investment?

Petitioner, for the transfer of his undivided one-eighth interest in the real property received Emerson's unsecured promissory note for $12,500, bearing interest at 6 per cent per annum. The value of the interest conveyed was the equivalent of the face amount of the note. The corporation, between 1936 and 1942, paid the interest provided for in the note. The parties themselves thus treated the transaction as creating a debtor and creditor relationship and not a proprietary interest. Cf. *Grant G. Simmons*, 4 T. C. 478, 483.

Also, as bearing upon the intention of the parties, is the important fact that, in addition to the promissory notes received by the heirs for conveying title to the real property, the heirs transferred additional personal property in the form of cash, securities, and receivables valued at $5,533.16, in consideration of which Emerson issued to each heir five shares of its no par common stock, representing his proprietary interest in the corporation. The notes and the stock were issued for entirely distinct kinds of property, which indicates rather clearly the intent of the heirs to differentiate between their respective interests as creditors and as stockholders. Furthermore, it appears from this record that three of the heirs, not including petitioner, received additional notes representing loans aggregating the sum of $8,418. Thus the interest of the eight heirs as creditors and as stockholders was not identical.

The respondent relies principally upon the cases of *Joseph B. Thomas*, 2 T. C. 193, and *Edward G. Janeway*, 2 T. C. 197, in support of his theory that petitioner and the other heirs had each made a capital contribution. In both of those cases the stock issued or to be issued was in exact proportion to the advances, so that the financial interest of each stockholder was exactly the same, whether treated as a creditor or stockholder. That condition does not obtain in the instant case. Furthermore the property for the conveyance of which the debts were created and the stock was to be issued was identical. As we have previously pointed out, in the case at bar the notes were issued for the transfer of real property and the stock was issued for the transfer of personal property.

The condition that five of the noteholders were required to join in demand for payment is not in any sense controlling. Such limitation might render the notes nonnegotiable. However, no authority has been cited, nor do we know of any holding, that nonnegotiable paper can not evidence a debt.

The sound inference to be drawn from this record is that, as was intended, a debt of $12,500 from Emerson to petitioner was created. We have so found as an ultimate fact.

The petitioner was not in the business of making loans, and, since the debt of $12,500 resulting from the unsecured loan of $12,500 which he made in 1936 was collectible only to the extent of $9,000 in 1943, petitioner sustained a nonbusiness bad, debt loss in that year in the amount of $3,500. Under section 23 (k) (4), nonbusiness bad debts are considered as capital assets held for not more than six months. Under section 117 (d) (2), short term capital losses, in the case of individuals, may be deducted to the extent of such gains, plus the net income of the taxpayer, or $1,000, whichever is smaller. On the record, the $1,000 limitation applies to petitioner.

We therefore conclude that petitioner is entitled to a deduction of $1,000 in 1944, under section 117 (e), as a capital loss carry-over from the prior year. The respondent erred in treating it as a long term capital loss sustained in 1944, and deductible to the extent of only $750.

Petitioner concedes he is not entitled to a deduction of the sum of $300 claimed on his return as entertainment and travel expenses and disallowed by the respondent.

Reviewed by the Court.

*Decision will be entered under Rule 50.*