Murphy Planing Mill, Inc. v. Commissioner. Fred Dierks and Martha Dierks v. Commissioner.
Murphy Planing Mill, Inc. v. Commissioner
Docket Nos. 55348, 55349.
United States Tax Court
T.C. Memo 1957-33; 1957 Tax Ct. Memo LEXIS 219; 16 T.C.M. (CCH) 151; T.C.M. (RIA) 57033; February 21, 1957
Louis F. Schultz, Jr., Esq., for the petitioners. John D. Picco, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax of petitioners as follows: Docket
Fiscal year ended
No.
September 30
Deficiency
55348
1949
$ 352.69
55348
1950
2,089.71
October 1 to December 31,
1950 (Short period)
5,250.00
55349
Calendar year 1950
5,169.66
The primary contested issue common to both docket numbers is whether the transfer by the individual petitioners, d/b/a Murphy Planing Mill, Inc., a partnership, of all the assets of the partnership on October 1, 1947, to the corporation *220 organized by the individual petitioners, solely in exchange for the issuance of the stock of the corporation or for the issuance of stock and "notes" constituted a nontaxable exchange under section 112(b)(5) of the Internal Revenue Code of 1939. Subsidiary issues in Docket No. 55348 are whether: (a) The respondent properly disallowed payments of purported interest on the notes, and (b) the basis of the assets received by the corporation is the same as in the hands of the partnership under section 113(a)(8) of the 1939 Code for the purpose of determining the gain realized by the corporation on the sale of its planing mill on October 1, 1948. In Docket No. 55349, a further issue is whether the basis of the stock received by the individual petitioners, or the stock and "notes" is the same as their respective basis in the partnership assets under section 113(a)(6) of the 1939 Code for the purpose of determining the gain realized upon the liquidation of the corporation in 1950. Findings of Fact The stipulated facts are incorporated herein by this reference. Petitioners Fred Dierks and Martha Dierks are husband and wife, residing in Grant's Pass, Oregon. They filed their joint *221 return for the calendar year 1950 with the collector of internal revenue for the district of Oregon at Portland, Oregon. Murphy Planing Mill, Inc., hereinafter referred to as the corporation, was organized under the laws of the State of Oregon on September 29, 1947, with an authorized capital of 200 shares of common stock of no par value. It filed its returns for the periods involved with the collector of internal revenue for the district of Oregon at Portland, Oregon. The corporation kept its books and reported its income on the cash basis. On January 1, 1946, Fred and Martha Dierks formed a partnership under the name of Murphy Planing Mill for the purpose of operating a planing mill located at Murphy, Oregon. The partnership kept its books and reported its income on the cash basis. It ceased business operations on September 30, 1947. The balance sheet of the partnership at September 30, 1947, as disclosed by the partnership return for the period January 1, 1947 to September 30, 1947, was as follows: Assets: Cash
$ 248.12
Depreciable assets
$47,721.59
Less: Reserve for depre-
ciation
7,493.73
40,227.86
Land
5,146.00
$45,621.98
Liabilities and Capital: Liabilities
None
Partners' Capital Accounts: Martha Dierks
$17,616.48
Fred Dierks
28,005.50
Total Liabilities and Capital
$45,621.98
*222 On September 30, 1947, the partnership also had certain accounts receivable in the amount of $25,114.01 which were not reflected on the above balance sheet. The principal assets of the partnership on September 30, 1947, consisted of plant and mill equipment in the amount of $40,227.86 denominated on the balance sheet as "Depreciated Assets." On October 1, 1947, petitioners transferred all the partnership assets having a fair market value of approximately $75,000 to the corporation which continued the business formerly carried on by the partnership and at the same location. Neither the partnership nor the corporation employed a bookkeeper, but retained the services of Sidney Bazett, a public accountant, who supervised the keeping of the books once every month. Bazett advised Fred Dierks that it would be advantageous to conduct the business in corporate form and he supervised the financial structure of the corporation. Until the latter part of 1950, Bazett also prepared both the income tax returns of the individual petitioners and the corporation. On October 1, 1947, the incorporators held a meeting and elected the following officers: President, Fred Dierks, Vice president, *223 Ben Dierks, Secretary, Martha Dierks. Each officer was also elected as a director. On October 1, 1947, the stockholders held their first meeting at which the following resolution was duly adopted. "BE IT RESOLVED that this corporation receive and accept as its own property, business and assets (and in regard to which it also hereby assumes all responsibility and obligations, as well as all powers and incidents as owner), all the property, business, assets and liabilities of any nature whatsoever of that business, business operation and/or business association, now and heretofore conducted and known as MURPHY PLANING MILL, a partnership, inclusive, of all the incidental business operations thereof as actually carried on and as authorized by the articles of incorporation, and which business is and has been conducted in the location now to be assumed for the business and operations of this corporation; that this said purchase of property, business and assets, as above recited, by this corporation be and is hereby made in consideration of, and the subject of purchase accepted in payment for, the capital stock of this corporation as subscribed according to the stock subscription list, *224 to-wit: Fred B. Dierks, 121 shares; Martha Dierks, 78 shares; Ben Dierks, 1 share; and that the capital stock of this corporation shall be issued in accordance with the above direction in full payment for said subject of sale on transfer to MURPHY PLANING MILL, INC., a corporation; and such issue of capital stock shall be the stock subscribed for by the said Fred B. Dierks, Martha Dierks, and Ben Dierks, and correctly represents their respective proportionate interests in and ownership of said subject of sale as of this date; and that upon the proper transfer of said subject of sale by deed or deeds and by bill of sale (and this Resolution, when subscribed by them shall also stand as a bill of sale) they be released from all further obligations under their said subscriptions and that all shares of capital stock of this corporation according to the Articles of Incorporation, to-wit: 200 shares of common stock without a nominal or par value shall then have issued as fully paid up and non-assessable; and "BE IT FURTHER RESOLVED and declared that the said subject of sale, to-wit: the property, business and assets of MURPHY PLANING MILL, a partnership, as above mentioned and outlined *225 which are hereby accepted by MURPHY PLANING MILL, INC., a corporation, in payment of its subscribed capital stock is deemed by the undersigned to be of the actual reasonable cash value of $75,000.00, all the stockholders of this corporation being thoroughly familiar with the said subject of sale. "On motion duly seconded and unanimously carried, the directors were authorized to issue the capital stock of the corporation in accordance with the Resolution above recited." * * *
The minutes were signed by Fred Dierks, Martha Dierks and Ben Dierks. On the date the directors held their first meeting, the minutes of that meeting read as follows: "Thereupon the President directed the attention of the board to the fact that at the first meeting of the stockholders of the corporation, it had been determined to purchase and take over all the property, business and assets of MURPHY PLANING MILL, a partnership, with its principal office in Murphy, Josephine County, Oregon, and the liabilities, obligations and responsibilities thereof, and the minutes of the first meeting of the stockholders, including the Resolution to that effect, were read in full by the Secretary for the attention *226 of the board; and pursuant to the directions of the stockholders therein set forth, the necessary formalities and transfers were duly authorized, effected and entered into for the purpose of effectuating the ends specified at the stockholders' meeting, and which was thereupon done whereby the property, business and assets of MURPHY PLANING MILL, a partnership, as specified in said Resolution were transferred to and purchased by MURPHY PLANING MILL, INC., and were accepted in consideration and in full payment for the capital stock of MURPHY PLANING MILL, INC., and the President and the Secretary were, on motion unanimously adopted, directed to issue to the respective stock subscribers, certificates for stock subscribed by each as fully paid up and in payment for the property, business and assets of MURPHY PLANING MILL, a partnership as aforesaid." On October 1, 1947, the corporation issued its entire authorized stock of no par value. Except for the qualifying share given to Ben Dierks, the capital stock was issued to petitioners in the same proportion as their capital accounts in the partnership. The opening journal entries on the corporate books were as follows: Cash
$ 248.12
Land
5,146.00
Plant and Equip-
ment: Building
$7,358.88
Planer
6,000.00
Office Equip-
ment
143.45
Lift Truck
5,949.95
Straddle Truck
5,829.89
Resaw
5,300.00
Feed Table
7,600.00
Blow Pipe
2,700.00
Blower and
Motor
850.00
Motor and Fil-
ing Equip-
ment
4,241.01
Motor and
Rolls
1,748.41
Total Plant and Equip-
ment
47,721.59
Land Improvements
30,000.00
Reserve for Depreciation
$ 7,493.73
Notes Payable: Fred Dierks
45,750.00
Martha Dierks
29,250.00
Capital Stock
621.98
$83,115.71
$83,115.71
*227 The notes disclosed in the opening journal entires were issued by the corporation and signed by Fred Dierks as president and Martha Dierks as secretary, in the following amounts: Payable to Fred Dierks
On Demand
$22,875.00
Ten years after date
22,875.00
$45,750.00
Payable to Martha Dierks
On demand
$14,625.00
Ten years after date
14,625.00
$29,250.00 Except for names, terms, and amounts, the four notes were exactly the same. A typical note reads as follows: "* * * after date, for value received, the undersigned Corporation promises to pay to the order of * * * Dollars with interest thereon at the rate of 6 per cent per annum, from October 1, 1947 until paid. Interest payable semi-annually, and if not so paid, the whole sum of both principal and interest shall, at the option of the holder hereof, become immediately due and payable, without notice. In case suit or action is instituted to collect this note or any portion thereof the undersigned corporation promises to pay such additional sums as the court may adjudge reasonable as attorneys fees in said suit or action." The notes were dated October 1, 1947, but the record does not disclose by whom they *228 were prepared or when they were executed. The notes were unsecured and were issued in direct proportions to the stock held by the petitioners. The petitioners anticipated that the notes would be paid out of earnings. On December 5, 1947, Bazett wrote the following letter to Niel R. Allen, the attorney in whose office the corporate minutes herein referred to were drafted. Re: Murphy Planing Mill, Inc. The capital structure of the above firm is to be set up as follows: Assets sold by partnership to corporation: Cash
$ 248.12
Plant
45,373.86
Goodwill
30,000.00
$75,621.98
In consideration of: 6% Notes Payable to: Fred Dierks
$45,750.00
Martha Dierks
29,250.00
$75,000.00
Stock issued to: Fred Dierks
121 shares
Martha Dierks
78 shares
Ben Dierks
1 share
200
621.98
$75,621.98
On December 6, 1947, Allen had a conference with the individual petitioners and Bazett to discuss the capital structure proposed in the Bazett letter and to obtain information for preparing the corporate minutes referred to herein. Allen was concerned with the filing of the initial information returns required of new corporations and the requirement *229 that corporations with no par stock had at least $1,000 formally designated as invested capital. No initial return was ever filed. After this meeting the corporate minutes here in question were prepared by someone in Allen's office. The aforesaid notes were carried in the journal ledger for the first fiscal year in an account entitled "Notes Payable-Long-Term", and for subsequent years in an account entitled "Notes Payable." The corporate and amended returns filed did not disclose whether the notes were for more or less than one year, although such information was requested on the return. Payments on the notes were charged to an account entitled "Advances-Officers and Employees." Payments were made periodically from March 8, 1948 to September 30, 1949. On the latter date the account "Notes Payable" was charged with payments in the amount of $39,125, and the account "Advances-Officers and Employees" was then credited. Interest on the notes and payments thereon were recorded in the general ledger under an account entitled "Accrued Interest." The entries in this account were as follows: 1948
Fol.
Debits
Credits
Balance
Feb. 28
18
$1,875.00 C
$1,875.00
Mar. 31
22
375.00 C
2,250.00
April 30
26
375.00 Cr
2,625.00
May 31
30
375.00 Cr
3,000.00
June 30
34
375.00 Cr
3,375.00
July 31
38
375.00 Cr
3,750.00
Aug. 3
42
375.00 Cr
4,125.00
Sept. 31
44
375.00 Cr
4,500.00
Sept. 30 -
Trans. to
new ledger
44
$4,500.00
1948
Oct. 1 -
Balance
1
4,500.00 Cr
4,500.00
*230 On October 1, 1948, the corporation sold its plant and mill equipment under a deferred payment contract for the sum of $75,000 to the Bilt Rite Corporation, the capital stock of which was owned equally by Fred Dierks, his father, and two brothers. Thereafter, Murphy Planing Mill, Inc., ceased operations and merely collected the installment payments under the sales contract. The transaction between the partnership and the corporation of October 1, 1947, was treated by all the parties as a nontaxable exchange. Late in 1950, petitioners employed B. K. Herndon, an accountant, to succeed Bazett. Herndon concluded that the October 1, 1947 exchange was a taxable exchange. Accordingly, on December 18, 1950, Herndon filed amended returns for the partnership, the corporation, and the individual petitioners reporting the transaction as a taxable exchange and paying additional tax on that basis. Herndon eliminated the account entitled "Land Improvements" originally recorded on the opening journal entries in the amount of $30,000, and treated such amount as taxable appreciation in the value of depreciable assets, and, as a result a "stepped-up" basis in depreciable assets was claimed on *231 the amended returns. The last four pieces of equipment shown on the schedule of assets attached to the amended return were acquired by the corporation subsequent to October 1, 1947, at a cost of $5,168.44, so that the appreciation in the value of such additional equipment was erroneously claimed. Herndon also advised the petitioners that it was advisable to correct the corporate minutes to reflect what the books showed as of October 1, 1947. On instructions from Herndon, Allen prepared minutes of a "special meeting" of the directors held on December 30, 1950. At this meeting the minutes provide, in part, as follows: * * *
"Resolved that that portion of the minutes of first meeting of directors held October 1, 1947 comprising the text of minutes appearing in the first eight lines at the top of page 3 of said minutes be and same hereby are corrected and revised to conform to the actual intent and conduct of that meeting and of the corporation pursuant thereto by substituting in the place thereof the following: 'done whereby the property, business and assets of Murphy Planing Mill, a partnership, as specified in said Resolution (as corrected and conformed) were transferred *232 to and purchased by Murphy Planing Mill, Inc., and were accepted by said corporation in consideration and in full payment for the capital stock of Murphy Planing Mill, Inc., together with the promissory notes of the corporation hereinafter specified as to amounts, terms and payee. In accordance with the corporation's Opening Balance Sheet of October 1, 1947, as set out in the minutes of said stockholders' meeting, the following is a synopsis of the said transaction as authorized and directed by the stockholders to-wit: 'SALE AND CONSIDERATION
'I. Partnership Assets Passing to Corporation: '1. Cash on hand
$ 248.12
'2. Plant (Real and personal) less reserve
45,373.86
'3. Leasehold improvements
30,000.00
$75,621.98
'II. Corporate obligations Passing to Partners (in
consideration thereof): '1. 6% notes issued and payable to: Fred Dierks
$45,750.00
Martha Dierks
29,250.00
$75,000.00
'2. Non-par Common Stock issued to: Fred Dierks
121 shares
Martha Dierks
78 shares
Ben Dierks (Qualifying)
1 share
621.98
200 shares
$75,621.98'
"Thereupon the president and secretary were on motion unanimously adopted, directed to *233 issue to the respective stockholders, certificates for stock subscribed by each as fully paid up, and the promissory notes of the corporation as specified in the foregoing table and in said Opening Balance Sheet, in full payment for the property, business and assets of Murphy Planing Mill, a partnership as aforesaid. "RESOLVED that in all other particulars the Minutes of said meeting of Board of Directors of October 1, 1947 remain in all things the same except with the changes noted." The minutes of the first meeting of the stockholders held on October 1, 1947, were not corrected or revised. The corporation had earnings and earned surplus as shown on the original returns filed in the following amounts: Fiscal Year end-
Earned
ing September 30
Earnings
Surplus
1948
$53,792.87
$33,351.58
1949
8,191.59
36,573.47
1950
4,031.52
42,869.95
December 31, 1950
(short period)
1,546.56
44,416.51
No dividend was ever declared by the corporation during its existence. The balance sheet of the corporation as of December 31, 1950, discloses the following assets and liabilities: Assets: Cash on hand
$12,503.27
Notes receivable, Bilt
Rite Corporation
$52,500.00
Advances to Bilt Rite
Corporation
17,500.00
70,000.00
Advances to Officers (Fred Dierks)
10,000.00
Total assets
$92,503.27
Liabilities and Capital: Notes payable to stockholders
$48,375.00
Accrued U.S. and Oregon income
taxes
540.72
Capital stock
$ 599.20
Surplus
42,988.35
43,587.55
Total Liabilities and Capital
$92,503.27
*234 In accordance with the resolution adopted by the directors at a meeting held December 31, 1950, the corporation was dissolved as of that date and its assets were distributed in kind to the stockholders as follows: Fred Dierks
Martha Dierks
Ben Dierks
Assets Distributed in Payment of Out-
standing Notes Payable: Advances to Officers
$10,000.00
Portion of Bilt Rite Notes
9,125.00
$29,250.00
Total
$19,125.00
$29,250.00
Assets Distributed in Exchange for Out-
standing Capital Stock: Balance of Bilt Rite Notes
8,588.57
5,536.43
Advances to Bilt Rite
10,640.71
6,859.29
Cash
7,468.33
4,814.30
$220.64
Total
$26,697.61
$17,210.02
$220.64
Less cash retained for payment of ac-
crued income taxes
327.14
210.88
2.70
Net distributed
$26,370.47
$16,999.14
$217.94
Total assets distributed
$45,495.47
$46,249.14
$217.94
The transaction of October 1, 1947, was in substance a transfer of property solely in exchange for stock of the transferee corporation and is governed by the provisions of section 112(b)(5) of the Internal Revenue Code of 1939. The petitioners intended the value of the assets transferred to be risk capital and the *235 notes received did not create a bona fide debtor-creditor relationship. The payments of purported interest on the "notes" were received by petitioners as stockholders and constituted dividends to the extent earnings and profits were available. The basis of the assets received by the corporation is the same as that in the hands of the petitioners prior to the exchange pursuant to section 113(a)(8) of the 1939 Code. The basis of the stock or of the stock and notes received by the petitioners is the same as their respective basis in their hands prior to the exchange pursuant to section 113(a)(6) of the 1939 Code. Opinion LEMIRE, Judge: The primary question common to both docket numbers is whether the transfer on October 1, 1947, by petitioners of the assets of their partnership business for the stock or stock and notes of a new corporation organized by them for the purpose of carrying on the same business in corporate form constituted a nontaxable exchange pursuant to section 112(b)(5) of the Internal Revenue Code of 1939. Certain subsidiary issues arise, and their disposition is concededly governed by the determination of the primary question posed. The answer depends *236 on whether, under the facts, petitioners intended to create a bona fide creditor relationship or to make a permanent investment. The question presented has been repeatedly litigated. Since the question of the intention of the parties is a factual one to be resolved from a consideration of the entire record, no purpose will be served by a review of the cases in which the question has arisen. Gooding Amusement Co., Inc., 23 T.C. 408, affd. 236 Fed. (2d) 159, (certiorari applied for); Edward G. Janeway, 2 T.C. 197, affd. 147 Fed. (2d) 602; Arthur McDermott, 13 T.C. 468; Sam Schnitzer, 13 T.C. 43, affd. per curiam 183 Fed. (2d) 70. The facts, many of which were stipulated, have been set forth at length in our findings of fact and only a summary of the more important ones will be referred to herein. Sidney Bazett, petitioners' accountant, advised them that many businesses were incorporating and it would be advantageous for them to do likewise. On September 30, 1947, petitioners along with Ben Dierks filed a certificate of incorporation under the laws of the State of Oregon of the Murphy Planing *237 Mill, Inc., with a capitalization of 200 shares of stock with no par value. The partnership of the petitioners at that time had assets carried on an adjusted basis to the partnership of $45,621.98, and a fair market value of approximately $75,000. On December 5, 1947, Bazett furnished Niel Allen, attorney for the corporation, with a statement showing the financial structure of the new corporation. This statement shows that the 200 shares of no par value stock was to be issued for $621.98, which amount was less than the minimum required by the corporate laws of the State of Oregon. On December 7, 1947, Allen had a conference with Bazett and petitioners for the purpose of discussing the financial structure of the corporation and the preparation of corporate minutes. Thereafter, appropriate minutes for both a stockholders' and directors' meeting were drafted in Allen's office. At the stockholders' meeting a resolution was adopted which states, in substance, that the corporation was to receive and accept all the property, business assets and liabilities of the partnership for the capital stock of the corporation. On the completion of the transfer of the property, the 200 shares of *238 the capital stock of no par value were to be issued as fully paid up and nonassessable. The directors were authorized to issue the capital stock in accordance with the resolution. A meeting of the directors was held on the same day. The minutes of this meeting disclose that the minutes of the stockholding meeting were read in full, and that pursuant thereto the necessary formalities were duly authorized, effected, and entered into for the purpose of transferring the property, business, and assets of the partnership to the corporation in consideration of and in full payment of its capital stock. The officers were directed to issue the certificates of stock as fully paid. The capital stock was issued to the petitioners in direct proportion to their capital accounts in the partnership except for the adjustment of the one qualifying share given to Ben Dierks. The minutes of the meetings of the stockholders and the directors make no mention of any notes to be issued in consideration of the transfer, nor were the officers authorized to execute any notes. The foregoing minutes appear to have been carefully drafted and to express the purpose and intent of the parties at that time to *239 exchange the assets of the partnership for the stock of the corporation. For a period of three years all the parties and the accountant, Bazett, treated the transaction as a nontaxable exchange. Late in 1950, Herndon, an accountant, who succeeded Bazett, concluded that the transaction qualified as a taxable exchange, and advised that the original minutes of the directors' meeting of December 7, 1947, be revised to indicate the issuance of notes as a part of the consideration for the exchange. On December 7, 1950, one day prior to the dissolution of the corporation, a special meeting of the directors was held and a resolution was adopted correcting and revising the former minutes. Herndon was not a witness and the record does not disclose the basis for his conclusion. Four promissory notes in the face amount of $75,000 were offered in evidence. The notes were for amounts in direct proportion to the capital stock issued to petitioners. Two of the notes were payable on demand and two were due in 10 years. Each note bore interest at six per cent payable semiannually. The notes issued to Fred Dierks totaled $47,750, one-half of such amount represented the demand note. The notes issued *240 to Martha totaled $29,250, one-half of which represented her demand note. All the notes were identical in form. They were not issued for new capital. It is the contention of petitioners that the transaction of October 1, 1947, was a taxable exchange under section 112(c)(1) of the 1939 Code because the demand notes constitute "boot." All the notes are dated October 1, 1947, and are absolute in form. If considered apart from the entire record, the notes tend to indicate an intention to establish a debtorcreditor relationship. One of the difficulties present here is the fact that the record does not show when the notes were executed or by whom prepared. Allen, attorney for the corporation, testified that he did not prepare the notes and never saw them. Fred Dierks testified he did not know who prepared them but thought they may have been prepared by Bazett, but he did not know when they were executed. They could have been predated. Assuming they were executed on October 1, 1947, it may be the plan was changed because of the requirement of the statutory requirement of a minimum capitalization of $1,000. No demand notes are indicated in Bazett's letter of December 5, 1947, to Allen. *241 No demand notes are indicated in the amended minutes of the directors' meeting of December 30, 1950. If the demand notes were a part of the plan of exchange, and were prepared by Bazett, why did he record them in an account "Notes Payable-Long-Term", and also fail to indicate their existence on the corporation's returns he filed in the space provided therefor? Only Bazett could clarify the inconsistencies. He was not sworn as a witness and no explanation was given for the failure to do so. The conduct of the parties has considerable bearing on their intention. The record shows no demand was ever made for payment. Fred Dierks testified that when funds were available and he needed money he drew a check which he considered a demand. Bazett, however, entered the withdrawals under an account entitled "Advances-Officers and Employees." Payments were not identified as for principal or interest. Although the corporation reported its income on a cash basis it "accrued" interest regularly under an account entitled "Interest." Payments aggregating $39,125 were made to Fred Dierks up to September 30, 1949, yet the corporation continued to accrue interest on the entire amount of $75,000 at the *242 rate of $4,500 annually in 1949 and 1950. No payments of principal were made to Martha and upon the liquidation of the corporation on December 31, 1950, her unpaid balance was in the face amount of her notes, notwithstanding the fact the assets of the corporation were sufficient to pay all debts. Recognizing the right of petitioners to select the form for conducting their business and to minimize their tax liability by any lawful means, no business purpose has been shown to exist for creating the large indebtedness. Fred Dierks testified that he was advised that everybody was incorporating and petitioners would be relieved of filing estimated returns. Partnerships are not required to file estimated returns either, and the fact that the business was incorporated would not relieve the petitioners from the statutory obligation. Among other judicial criteria developed by the courts to determine intent as to whether a given transaction gives rise to a bona fide debt or a proprietary interest is the ratio of debt to equity capital. The value of the 200 shares of no par value stock was fixed at a total of $621.98 which not only runs afoul of the Oregon law requiring a minimum capital *243 of $1,000, but it establishes a ratio of debt to equity investment of 75 to.06 per centum. From such a large ratio, a strong inference arises that the entire amount of indebtedness in reality represents a contribution to capital and is placed at the risk of the business. Petitioners rely on the testimony of Fred Dierks that it was their intention to create a bona fide debtor-creditor relationship and that he would have enforced the obligation regardless of the effect on the corporation's credit position. We are unwilling to accord full credence to his testimony. On crossexamination he repeatedly disclaimed knowledge and lack of memory with respect to important matters and it appeared to the Court that he was intentionally evasive. He attempted to excuse his lack of knowledge by stating that Bazett had charge of the entire matter and he relied upon him to do the right thing. Under the circumstances, we think that failure to call Bazett as a witness warrants the inference that his testimony would not have been favorable. According to the various factors the weight which in our judgment they merit and in the light of the entire picture revealed by the record, we are convinced that *244 no genuine debtor-creditor relationship was intended or, in fact, created by the corporate notes in question. Therefore, we hold that the transaction of October 1, 1947, whereby the property and assets of the partnership of petitioners were exchanged for stock, or stock and notes qualifies as a nontaxable exchange within the purview of section 112(b)(5) of the 1939 Code. The parties are in accord that our holding upon the primary issue is dispositive of the subsidiary issues. We therefore hold in Docket No. 55348 that the respondent did not err in disallowing the corporation a deduction for alleged interest payments; and, that the basis of the assets received by the corporation was the same as in the hands of the partnership pursuant to section 113(a)(8) of the Internal Revenue Code of 1939, for the purpose of determining the gain realized on the sale of its mill and equipment on October 1, 1948. In Docket No. 55349 we hold that the basis of the stock, or the stock and notes received by the individual petitioners was the same as their respective basis in the partnership assets pursuant to section 113(a)(6) of the 1939 Code, for the purpose of determining gain realized upon *245 liquidation of the corporation in 1950. Effect will be given to the appropriate figures stipulated in the event of our holding the transaction to be a nontaxable exchange. Decisions will be entered under Rule 50.